Chief Justice Robertson,
delivered the opinion of the court.
Exocn Smith, in principle an emancipator, and who liberated all his own slaves, having bought Sarah, the wife of Ben, a free man of color, for the purpose of securing her eventual emancipation, sold her to *104 her husband in 1809, and took his promissory notes, for the price, payable in instalments, and on long credits. It was understood, at the time of the sale, that Sarah and her children should be liberated; and Enoch Smith, after the sale, manifested a solicitude, that the emancipation should be effected without delay, lest Ben, who seems to have been insolvent, might, by incurring debts, incapacitate himself for the effectuation of the contemplated object. Under the infl uence5of this benevolent forecast, he prepared a deed for the emancipation of Sarah, in 1813, and presented it to a lawyer for his advice as to its sufficiency, who inserted the names of Milton and Fanny, children of Sarah, and in the possession of Ben; and then, at the instánce, and in the presence of E. Smith, had the deed acknowledged by Ben, in the county court. The price, promised to Smith for Sarah, was not paid, and the greater part of it yet remains due.
E. Smith lived several years after the emancipation, during all which time,he recognized Sarah, Milton and Fanny, as free persons. In his will, he did not mention them, or any one of them. Fanny was born after the sale to Ben, but whether Milton was bom before or after that time, is not ascertained with certainty.
In 1825, E. Smith died; Ben died intestate in 1818.
After the death of E. Smith, Ferguson, who is one of bis executors, was appointed administrator of Ben, and thereupon took Sarah, Milton and Fanny, into his possession, evincing a determination to sell them, for the purpose of raising a fund for the payment of the debt 'due his testator. The bill in chancery, in this case, was then filed, alleging, among other things, the foregoing facts, and prayingfor an injunction restraining Ferguson, :as administrator, and Ferguson and Enoch Smith, as executors of E. Smith, from selling, or otherwise molesting Sarah, Milton, or Fanny, and for general reliefi The injunction was awarded accordingly.
The answer admits the principal allegations of the bill, but denies the jurisdiction of the court; insists, that the rights of the testator, as creditor, were not impaired by his agency in effecting the emancipation; and avers, that Milton was born before the sale of his mother to Ben.
Chancellor has jurisdiction to injoin * or molesting slaves tate?m
Ration a”ho slave is free as against the world besides, excepting on-]y firm fide some other" person who a better right to the slave than the emancipator,
Rights ofcre-^ot of emancipation nor otherwise ?56°4,14’fl,r’ liem for the ui. debts.
Slave eman_ cipated, lorms part of as- ^ atadnis-* Uator of e-Arim^h ¡¡sro „re:osTof paymgdebta °aas"y to^the possession or control of slaves emancipated by his intestate.
*105 The circuit court perpetuated the injunction,-arid We •approve the decree.
i . The chancellor had There was rió other-:-. adequate remedy.
It is not material whether Milton Was horn before or after the sale of Sarah to Ben. E. 'Smith held no claim to him; assented to, and advised the emancipation llina, and ever afterwards acquiesced. He intended to leave no vestige of slavery behind him. All the defendí ants in error must therefore be considered os occupying the same ground.
Ferguson, as administrator of Ben, had no interest in the plaintiffs, nor any right to control them. Pre-exist-ing bona fide creditors of Ben, who did not assent to the deed of emancipation, might disregard it so far as their just claims might be affected by it. For the maxim, that a man must be just before he Is generous, was applied to the emancipator, by the act of assembly of 1798, (II Digest, 1155,) whereby the rights of creditors, and all others, except uthe heirs or legal representatives,” of the emancipator, are saved. r 7
But after manbmission, the person, so liberated, is free, as against themmancipator, and the world besides, ex-cep tin only bona fide creditors, or some other person, who had a better right to the slave, than the person had, who attempted the liberation; and, as to such a creditor, his right does not nullify the act of emancipation, nor otherwise affect it, farther than as a lien for the ultimate security oí the debt.
The person emancipated is no part of the assets in the hands of the personal representative of the emancipator, The emancipation, being effectual against the emancipator, must be equally so, against his heir and personal representative; and the act of assembly expressly clares that it shall be equally so, against them all.
As administrator of Ben, Ferguson had therefore no right whatever, to the custody of the defendants in error.
By taking them forcibly into his possession, he committed a high handed trespass on their rights.
Nor had E. Smith’s executors the semblance of legal authority, for any control over the defendants.
Act of 1798 saves rights of creditors of e mancipator, only* s statute of 'frauds protects rights of creditors. Therefore, if creditor assent to and _ urge emancipation of a slave, be ■waives his right to subject him, after emancipation to satisfaction of his debt.
If, as creditors of Ben, they could have asserted a right to make their debt out of the defendants, they might, after ascertaining their debt by judgment, have proceeded against them, unless they could otherwise have made the amount of it. But without either execution, or judgment, they surely had no more right to capture the defendants,nor attemptto sell them,than any ■other persons would have had.
But according to the proof in this case, the plaintiffs could have acquired no right to the defendants by obtaining judgment, and issuing a fieri facias on it. Their testator had waived his right, to make his debt or any portion of it, out of the defendants, or any of them.
The act of 1798, would have saved the right of E. Smith, as the creditor of Ben. Butitwould have saved it, justas the common law, and the statutes for the prevention of gifts, grants, or devises, in fraud of creditors, will protect their rights from the fraud or premature generosity of their debtors. The law will not allow the honest creditor to be defrauded of his just rights, by the collusive or voluntary alienation, by the debtor, of his property. But, if the creditor he privy to the alienation, and assent to it, it is not fraudulent, nor inoperative as to him. “Volenti non fit injuria,” applies as emphatically to such a case, as to any other.
In this case, the testator not only was privy to the emancipation, but urged, and assisted in effecting it.
His motive, for hastening it, was to secure to the defendants, their liberty, unincumbered by the claims of those, who might become Ben’s .creditors. He surely did not intend to hold any lien on them himself. That he did not, is made manifest. He waived all the right, which he otherwise might have had, to call in question the perfect right of the defendants to their liberty, una£ fected by his debt. He was nottherefore injured by the emancipation; and, if he had been, he was instrumental in the act, from which the injury resulted.
The act of assembly was designed to save the rights 'of creditors, who might need, and claim its protection, against the acts of their debtors. It was not enacted, to protect creditors from the consequences of their own acts, nor of those of their debtors, done with their knowledge and approbation.
Monroe and Triplett, for plaintiff; Hanson, for defendant.
As the executors of E. Smith, therefore, the plaintiffs can have no right to, nor interest in the defendants, or anj one of them.
Wherefore, the decree perpetuating the injunction, is affirmed.